**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Frederick Gadson

v. Civil No. 08-cv-103-PB

Peter Knox, Trustee, Castle Trust, et al.[1]

**REPORT AND RECOMMENDATION**

Before the Court is Frederick Gadson's complaint (document no. 1) seeking relief for a violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq. ("FHA"). Because Gadson is pro se and filed this complaint in forma pauperis, the matter is before me for preliminary review to determine whether or not the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1). For the reasons stated herein, I direct, in an Order issued simultaneously with this Report and Recommendation, that the claim alleging discriminatory failure to provide services against the defendants be served, and recommend that the remainder of the claims in the complaint be dismissed.

[1]In addition to Knox, Gadson has named the Oak Leaf Trust and James Colburn, the Blueberry Hill Mobile Home Park onsite manager, as defendants to this action.

Standard of Review

Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(1)(B). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id. This review ensures that pro se pleadings are given fair and meaningful consideration.

Background

Although the complaint in this matter fails to present a clear chronology of relevant events, construing the facts alleged generously, I find as follows for purposes of preliminary review. Frederick Gadson, who is African-American, lives in the Blueberry Hill Mobile Home Park ("BH Park") in Charlestown, New Hampshire. He has lived there for eleven years. Plaintiff alleges that, beginning in February of 1998, he has been the victim of racially discriminatory housing practices by members of the management and ownership of BH Park.

On February 11, 1998, Gadson was informed by BH Park management that he could not light fires on the BH Park grounds for any reason. Plaintiff noted that no other BH Park residents were told that they could not light fires within the park. Plaintiff had previously been advised by the BH Park Manager that if it had been known before he moved in that Gadson was African-American, he would not have been able to purchase a mobile home there and he attributes the restriction on his ability to light fires to racially motivated animus.

In August of 1999, James Colburn became the park manager and tried to evict plaintiff on three occasions between August 13,

1999 and February 19, 2000.  Colburn also denied housing to members of plaintiff's family by telling them that no mobile homes were available to rent at BH Park because they were selling the mobile homes.  However, contemporaneously with that assertion, Colburn offered a white person a rental unit on two separate occasions and has also rented to his own family members who are, presumably, white.

Shari Edmonds, the Office Manager for Oak Leaf Trust[2], made several allegations against plaintiff that, Gadson alleges, were motivated by racial animus on her part.  Specifically, Edmonds stated that: (1) plaintiff was "the only person who sees himself as a person of color and will go out of his way to make sure everyone knows it," (2) plaintiff could have been evicted because his grandchildren shot pellets and shot windows out of other tenants' mobile homes, (3) plaintiff stole an awning from another mobile home and put it onto his property, (4) plaintiff had no burn permit to burn stumps out of the ground on his lot, and (5)

---

[2]It is not clear what role Oak Leaf Trust plays in the management of BH Park but, for purposes of preliminary review, I will presume that Oak Leaf Trust is in some position of authority over the tenants of the BH Park and that the Oak Leaf Trust has the ability to engage in activities that would impact the use of BH Park by its tenants.

plaintiff had a freezer on his lot that did not lock even though Edmonds told plaintiff to lock the freezer.

Finally, plaintiff alleges that in December 2005, he requested that his telephone lines be reburied as they had to be dug up and repaired due to damage done by both BH Park management and other BH Park tenants. Plaintiff alleges that he has not been provided with that service, although such services are offered to other tenants of BH Park who are white.

Plaintiff states that he filed a complaint of racial discrimination with the United States Department of Housing and Urban Development on June 16, 2006. That agency denied the complaint, making a finding of "No Reasonable Cause." On November 8, 2006, plaintiff field a motion for reconsideration with the Fair Housing Enforcement and Equal Opportunity Office, which was denied on March 22, 2007. Plaintiff now appeals the denial of his complaint.

## Discussion

### I. Fair Housing Act

The FHA is intended "to provide within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The FHA "forbids racial discrimination in respect

to the sale or rental of a dwelling." Meyer v. Holley, 537 U.S. 280, 282 (2003). The FHA makes it unlawful:

> (a) [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
> (b) [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
> (c) [t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.
> (d) [t]o represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.
>
> . . .

42 U.S.C. § 3604.

II. Standing

Gadson claims that his rights have been violated because his family members, African-Americans, were denied the ability to rent at the BH Park under the pretense that no rental units were

available when, in fact, they were available and were offered to white renters.  Section 3604 of the FHA prohibits a landlord from refusing to rent to a person on the basis of his race, or from misrepresenting the availability of a rental property in order to keep a member of a certain race from renting that property.  Here, Gadson has not alleged that he himself was denied rental property or that the defendants represented to him that any rental property was unavailable.  To the extent plaintiff alleges such activity on the part of defendants, he asserts that it was, in fact, relatives of his, rather than plaintiff himself, that were the damaged parties.

In all stages of federal judicial proceedings, the parties must have a personal stake in the outcome of the action.  Spencer v. Kemna, 523 U.S. 1, 7 (1998) (internal citations omitted).  This means that Gadson's complaint must allege some injury to himself that could be redressed by a favorable judicial decision.  Id.  A suit is moot if it fails to present a live case or controversy.  Jackson v. Coalter, 337 F.3d 74, 79 (1st Cir. 2003).  The Supreme Court has held that claims brought under the FHA are to be judged under a liberal standing requirement, and that an FHA plaintiff need not allege that they were actually a

victim of discrimination, but only that they suffered the "Article III minima of injury in fact." Havens Realty Corp. v. Coleman, 455 U.S. 363, 3722 (1982). Gadson has not presented any facts demonstrating that he was personally affected or injured by those actions, only that they were generally against the law. I find, therefore, that Gadson has presented neither a live case or controversy nor any injury in fact for this Court to resolve or redress regarding any claims relating to the denial of rental opportunities to his relatives. I therefore recommend that these claims be dismissed.

III. Statements of Sherri Edmonds

As stated above, the FHA prohibits "any statement . . . that indicates . . . an intention to make [a] preference, limitation, or discrimination" on the basis of race or other protected category. 42 U.S.C. § 3604(c). Edmonds' statements, standing alone, can constitute evidence of a discriminatory intent on the part of the speaker. However, Gadson does not allege any discriminatorily motivated adverse action was taken by Edmonds against him. Therefore, Gadson has not stated any claim against Edmonds under the FHA.

IV. Attempted Eviction Claims

Gadson claims that Colburn, the onsite manager of BH Park, sought to evict Gadson three times in 1999. Gadson claims that Colburn was motivated by a desire to deny housing to African-Americans. A claim under the FHA is timely if it occurs within the limitations period or is alleged to be a continuing violation fo the FHA that extends into the limitations period. The FHA contains a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A). This action was not filed until 2008, approximately eight and a half years after the alleged 1999 attempts to evict Gadson.[3] Accordingly, I find that the claims alleging discriminatory attempts to evict Gadson are untimely and I recommend they be dismissed on that basis.

V. Claims Regarding Telephone Line Maintenance

Section 3604(b) of the FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or

[3]Section 3613(a)(B) provides for an exclusion from the limitations period for time during which an administrative proceeding was pending with respect to a discriminatory housing claim raised in the FHA Suit. While Gadson filed an administrative complaint, he did not do so until 2006. The limitations period that applies to the attempted eviction claims expired, at the latest, in February of 2002.

facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Gadson alleges that the proper maintenance of buried telephone lines at the BH Park is a service provided by defendant owners and managers of the park. Gadson claims that he was denied maintenance of his buried telephone lines because he is African-American. He attributes the lack of services to racially motivated animus based on comments made by defendants as well as Gadson's belief that telephone line maintenance is performed for white tenants of BH Park. Accordingly, I find that Gadson has alleged the minimum facts necessary to state a claim under the FHA against defendants. I will, therefore, direct that this claim proceed against defendants in an Order issued simultaneously with this Report and Recommendation.

VI. Out-of-State Defendants

Gadson has sued three separate defendants, James Colburn, the onsite manager at BH Park, Castle Trust Trustee Peter Knox, and the Oak Leaf Trust. Knox and the Oak Leaf Trust are located in Massachusetts. For purposes of preliminary review, I find that the Massachusetts defendants, as owners or managers of the BH Park located in New Hampshire, have sufficient contacts with

New Hampshire to subject them to the jurisdiction of this Court. See Int'l Shoe Co. v. Wash. Office of Unemp. Comp. & Placement, 326 U.S. 310, 316 (1945) (finding due process allows service against an out-of-state defendant with certain minimum contacts with the forum state).[4]

VII. Motion for Court-Appointed Counsel

Gadson has filed a motion seeking court-appointed counsel (document no. 3). Section 3613(b) authorizes this Court to appoint counsel, but does not require such an appointment. Gadson alleges that he has contacted private attorneys but that he has not been able to find legal representation on his own. There is no absolute constitutional right to free legal representation in a civil case. Bemis v. Kelley, 857 F.2d 14, 15 (1st Cir. 1988). Rather, appointment of counsel in a civil case is left to the discretion of the court. See 28 U.S.C. § 1915(d); 42 U.S.C. § 3613(b). An indigent litigant must demonstrate that exceptional circumstances exist to justify appointment of counsel, such that without counsel the litigant most likely would be unable to obtain due process of the law. DesRosiers v. Moran,

---

[4]Nothing in this finding prevents defendants from raising a defense based on this Court's lack of personal jurisdiction if such a defense is appropriate under the circumstances of this case.

949 F.2d 15, 23 (1st Cir. 1991); Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986) (per curiam). In the case at hand, Gadson has failed to establish the existence of such circumstances. Gadson's motion for a court-appointed attorney is therefore denied without prejudice to refiling in the future should circumstances warrant.

Conclusion

For the foregoing reasons, I recommend that all of the claims, except the claim alleging the racially motivated denial of telephone line maintenance services against defendants, be dismissed. In an Order issued simultaneously with this Report and Recommendation, I direct service of that claim against the three named defendants.

The motion for a court-appointed attorney (document no. 3), is denied.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of

Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992);

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

/s/ Justo Arenas
Justo Arenas
United States Magistrate Judge

Date: August 14, 2008

cc: Frederick Gadson, pro se